The WISCONSIN CONFERENCE BOARD OF TRUSTEES OF the UNITED METHODIST CHURCH, INC., Plaintiff-Appellant,

v.

Ronald CULVER, Loretta Konrad, Lucille Krentz, Arthur Lamonska, Gordon Trapp, John Does 1 through 20 and Jane Does 1 through 20, Defendants-Respondents.†

Court of Appeals

*No. 99–1522. Submitted on briefs March 28, 2000.—Decided May 10, 2000.*

## 2000 WI App 132

(Also reported in 614 N.W.2d 523.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jon G. Furlow* and *Mary C. Turke* of *Michael, Best & Friedrich LLP* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lan Waddell* of *Waddell & Pavia* of Columbus.

On behalf of all five presbyteries of the Presbyterian Church (U.S.A.), an amicus curiae brief was filed by *Kevin J. Sjostrom* of *Brusky & Sjostrom S.C.* of Wauwatosa.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1.   NETTESHEIM, J.   This case involves a property dispute between The Wisconsin Conference Board of Trustees of the United Methodist Church, Inc. (UMC) and the local Elo United Methodist Church (Elo). The dispute resulted from a schism between the two churches regarding certain church dogma.

¶ 2.   In this declaratory action, UMC claimed that the property housing the Elo church and parsonage had vested in the annual conference of the Methodist Church pursuant to WIS. STAT. § 187.15(4) (1997–98)[1] because Elo had become "defunct" or "dissolved" within the meaning of the statute.[2] Elo moved for dismissal, contending that the circuit court was without subject matter jurisdiction and that the UMC complaint failed

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

[2] The UMC named the Elo trustees and parishioners as defendants. For ease of reference, we collectively refer to these individual defendants as "Elo."

345

to state a claim. The UMC moved for summary judgment, which the circuit court rejected. Instead, the court granted Elo's motion for dismissal, ruling that the summary judgment evidence did not establish that Elo was "defunct" or "dissolved" within the meaning of the statute.

¶ 3. We reverse the judgment dismissing the UMC complaint. We hold that the undisputed facts demonstrate that Elo became defunct or dissolved within the meaning of WIS. STAT. § 187.15(4) when it severed its ties with the UMC. Therefore, pursuant to the statute, the property vested in the annual conference of the UMC. We grant summary judgment to UMC.

## FACTS

¶ 4. The material facts are not in dispute. Elo began when a group of worshipers conducted Methodist services in the home of Armine and Anna Pickett in Utica Township in 1846. By deed dated March 15, 1860, Isaac and Abigal Corliss conveyed the property in dispute to various individuals identified as "Trustees of the Methodist Episcopal Church of the Liberty-Prairie Circuit Wisconsin Conference." The deed further states that the conveyance is made "in Trust for the Methodist Episcopal Church." Following this transaction, a church and parsonage were constructed on the land. Elo was first known as "Centenary" church. Subsequently, it was called "Utica Center." Later it became known as the "Elo Methodist Church." Still later, it changed its name to the "Elo United Methodist Church." Regardless of its designation, Elo was at all times affiliated with the Methodist Church under its various designations.

¶ 5. The current UMC was originally known as the "Methodist Episcopal Church." In 1938, the church merged with certain other Methodist churches to become "The Methodist Church." In 1968, The Methodist Church merged with the Evangelical United Brethren to create the "United Methodist Church," its current designation. In response, Elo Methodist Church changed its name from the "Elo Methodist Church" to the "Elo United Methodist Church." At this time, the UMC asked Elo for a trust deed to the property. Elo declined.

¶ 6. The UMC is organized in a hierarchical fashion. The governing body on the state level is the Wisconsin Annual Conference of the United Methodist Church. The annual conference coordinates and has general supervisory responsibility of the activities of the various United Methodist churches throughout Wisconsin. The doctrinal law of the United Methodist Church is set out in THE BOOK OF DISCIPLINE OF THE UNITED METHODIST CHURCH, 1996. In addition, the DISCIPLINE sets out the hierarchical structure of the church and the rules governing the relationships among and between the national, state and local levels of the UMC.

¶ 7. The DISCIPLINE states that "titles to all properties held . . . by a local church . . . shall be held in trust for The United Methodist Church and subject to the provisions of its *Discipline*." DISCIPLINE § 2501. The DISCIPLINE further states, "On such recommendation that a local church no longer serves the purpose for which it was organized . . . the annual conference may declare any local church within its bounds discontinued." *Id.* at § 2548.

¶ 8. In 1996, the Wisconsin Annual Conference voted to initiate dialog relating to the church's position

on the issue of homosexuality. Based on this and other disagreements with the annual conference, Elo voted on June 15, 1997, to "disavow ourselves from the United Methodist Conference and to rescind any and all relationships with said Conference, thereby declaring ourselves as a non-affiliated and independent Christian Church." Later, Elo resolved not to honor its financial obligations to the annual conference and appointed five parishioners to negotiate the terms of the dissolution. Elo also changed its name from the "Elo United Methodist Church" to the "Elo Evangelical Church."

¶ 9. In response, the UMC declared by resolution that Elo had abandoned its ties with the UMC and no longer served the purpose for which it was organized. The UMC further resolved to take control and ownership of the Elo property. Elo, however, refused to surrender the property.

¶ 10. The parties were unable to resolve their differences. As a result, the UMC commenced this action for declaratory relief, seeking a ruling that the property had vested in the UMC pursuant to the DISCIPLINE and WIS. STAT. § 187.15(4).[3] After this lawsuit was instituted, Elo again changed its name to the "Elo Evangelical Methodist Church." According to an affidavit filed in opposition to the UMC's motion for summary judgment, this name change was designed to demonstrate that Elo was not defunct and dissolved under § 187.15(4).

---

[3] The complaint also alleged a trespass claim and further sought an injunction enjoining Elo from using the property for any purpose other than as a United Methodist Church.

## *THE TRIAL COURT PROCEEDINGS*

¶ 11.   Elo moved for dismissal of the UMC's complaint for lack of subject matter jurisdiction and failure to state a claim. UMC moved for summary judgment. Both parties cited to the above history in support of their conflicting positions.   The trial court rejected UMC's summary judgment motion. Instead, the court granted Elo's motion for dismissal, ruling that Elo was not defunct or dissolved within the meaning of the statute. The court did not address Elo's subject matter jurisdiction argument. The UMC appeals.

## *DISCUSSION*

### *1.   Test for Appellate Review*

¶ 12.   We first consider whether we review this case under the law of summary judgment or the law governing dismissal of a complaint. We are uncertain whether the trial court dismissed UMC's complaint in response to Elo's motion for such relief or whether the court invoked WIS. STAT. § 802.08(6), which permits a court to grant summary judgment to the nonmoving party. However, when making its ruling, the court alluded to matters beyond the complaint but which were contained in the summary judgment record. We therefore opt to review the matter under summary judgment law, rather than under the law relating to dismissal of a complaint.

## 2. "Neutral Principles of Law"

¶ 13.   The parties' briefs, including the amicus brief,[4] debate the extent, if any, to which this court may or should delve into the DISCIPLINE in resolving the legal issue before us. "[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Jones v. Wolf*, 443 U.S. 595, 602 (1979) (citation omitted). "Most importantly, the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." *Id.* However, "the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes." *Id.* A state may adopt any one of various approaches for settling such disputes so long as it does not entangle the state in doctrinal matters. *See id.*

¶ 14.   From these principles, the "neutral principles of law" doctrine has emerged. This doctrine allows the courts to adjudicate church property disputes on the basis of "objective, well-established concepts of trust and property law familiar to lawyers and judges." *Id.* at 603. However, this doctrine does not mean that all church documents are off limits. To the contrary, the "neutral principles of law" method permits a civil court to examine certain religious documents, such as a church constitution, deed or corporate charter, which inform on the question. *See id.* at 604. However, the scrutiny and interpretation of such materials must be from a secular, not a religious, perspective. *See id.*

¶ 15.   The "neutral principles of law" approach has met with approval in Wisconsin. *See L.L.N. v.*

---

[4] We have received an amicus curiae brief from all five presbyteries of the Presbyterian Church (U.S.A.).

*Clauder*, 209 Wis. 2d 674, 687, 563 N.W.2d 434 (1997). However, when employing this approach, the courts must avoid excessive government entanglement with religion. The entanglement doctrine springs from the Establishment Clause language set out in the First Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment. *See id.* at 686. The Establishment Clause states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." *Id.* As a result, courts do not interpret church law, policies or practices. *See id.* at 687. Instead, the courts' involvement in church matters is limited to "neutral principles of law." *Id.*

¶ 16.   Therefore, to the extent that the parties invoke the doctrinal rules set out in the DISCIPLINE and even the Bible, we, like the circuit court, properly avoid that "entanglement." Were it otherwise, we would have to answer Elo's trial court allegation that "[w]e haven't changed one bit" and its related appellate contention that "the Elo Church is a vital, existing, fully-functioning Methodist congregation." We properly decline to enter this debate as to which party is more doctrinally pure under the tenets of the Methodist religion.

¶ 17.   Instead, under the "neutral principles of law" doctrine, we look from a secular perspective to the authorities and documents that inform us on the issue. And, as we will shortly explain, those sources are WIS. STAT. § 187.15(4) and the relevant portion of the DISCIPLINE.[5]

---

[5] The "neutral principles of law" doctrine also answers the subject matter jurisdiction argument which Elo registers in its response to the amicus brief. Elo argues that we are without subject matter jurisdiction to consider matters in the DISCIPLINE. Although Elo casts this argument in subject matter

### 3. Ownership Under the Original Deed

¶ 18. The parties debate at some length whether the UMC or Elo acquired ownership to the property under the original deed. We deem that issue irrelevant in light of WIS. STAT. § 187.15(4) and the DISCIPLINE.

¶ 19. WISCONSIN STAT. § 187.15(4) states:

> Whenever any local Methodist church or society shall become defunct or be dissolved the rights, privileges and title to the property thereof, both real and personal, shall vest in the annual conference and be administered according to the rules and discipline of said church.

¶ 20. Webster's Dictionary defines "vest" as "to give a person a legally fixed immediate right of present or future enjoyment of (as an estate)" and "to grant or endow with a particular authority, right, or property." WEBSTER'S COLLEGIATE DICTIONARY 1314 (10th ed. 1993). Thus, the term "vest" connotes the conferring of a power or right that did not previously exist. By providing for the vesting of a local church's property in the annual conference of the UMC when a local church becomes defunct or is dissolved, WIS. STAT. § 187.15(4) implicitly recognizes the converse—that the local church is divested of "title to the property thereof" under those circumstances. Therefore, even if Elo acquired ownership of the property via the original conveyance, the statute operates to divest it of such ownership if the predicate situation has been established.

---

jurisdiction terms, it really is an argument addressed to the scope of our review. The "neutral principles of law" doctrine instructs as to that scope and we abide by the doctrine in this opinion. Therefore, we do not address the subject matter jurisdiction issue any further.

¶ 21. Although we disagree with the trial court's ultimate conclusion in this case that Elo was not defunct or dissolved within the meaning of WIS. STAT. § 187.15(4), we note that the court followed the same methodology that we have stated here. The court did not decide the ownership issue. Instead, the court properly saw the issue as whether Elo was defunct or dissolved.

¶ 22. Ownership under the original deed is also rendered irrelevant when we look to the DISCIPLINE. From its origins until it severed its relationship with the UMC, Elo was affiliated with the Methodist religion. The DISCIPLINE recites, in relevant part, that "titles to all properties held at General, jurisdictional, annual, or district conference levels, *or by a local church or charge . . . shall be held in trust for The United Methodist Church* and subject to the provisions of its *Discipline*." DISCIPLINE § 2501 (emphasis added). This language is clear and unambiguous. It converts the local ownership of church property to ownership in trust for the benefit of the UMC.[6] We stress that our use and interpretation of the DISCIPLINE is in keeping with the "neutral principles of law" approach which permits a court to look to relevant church documents which inform on the issue so long as the court employs a secular analysis. Our interpretation of the DISCIPLINE is in keeping with this constraint.

■

¶ 23. In summary, the collective operation of the DISCIPLINE and WIS. STAT. § 187.15(4) is as follows. Under the DISCIPLINE, when a local church affiliates with the UMC, the local church property is held in

---

[6] Thus, it is not relevant that Elo declined to provide the UMC with a trust deed to the property following the 1968 merger.

trust benefit of the UMC. Under the statute, if the affiliation between the local church and the UMC is dissolved or the local church becomes defunct, the title to the property vests in the annual conference of the UMC.[7]

### 4. "Defunct" or "Dissolved" Under WIS. STAT. § 187.15(4)

¶ 24. We now turn to the issue that lies at the heart of this case: whether Elo became defunct or dissolved within the meaning of WIS. STAT. § 187.15(4). As noted, we review this question under the law of summary judgment.

¶ 25. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2). A summary judgment motion presents a question of law that we review de novo. *See Henry v. General Cas. Co.*, 225 Wis. 2d 849, 856, 593 N.W.2d 913 (Ct. App.), *review denied,* 228 Wis. 2d 168, 599 N.W.2d 409 (June 7, 1999) (No. 98–2428).

---

[7] Alternatively, we hold that the UMC acquired ownership to the property under the original deed. The opening paragraph of the deed recites the parties to the conveyance, identifying the grantees as the "Trustees of the Methodist Episcopal Church of the Liberty-Prairie Circuit Wisconsin Conference." Elo says that this language means that it owns the property. We disagree. This language merely identifies the parties to the instrument and, as to the grantees, the capacity in which they took title. The actual conveyance language of the deed conveys the property "in Trust for the Methodist Episcopal Church." This language establishes that the beneficial ownership of the property rests with the UMC, the successor to the Methodist Episcopal Church.

Despite our de novo standard of review, we value a trial court's ruling on the matter. *See id.*

¶ 26.   Although the parties sharply disagree as to whether Elo was defunct or dissolved within the meaning of WIS. STAT. § 187.15(4), they do not dispute the controlling history and facts of this case. Neither do the parties register any dispute about the meaning of the terms "defunct" or "dissolved" as used in § 187.15(4). Rather, the dispute is whether the facts of this case demonstrate that Elo became defunct or dissolved. The application of a statute to a set of facts presents a question of law that we review independent of the trial court. *See Beard v. Lee Enters., Inc.*, 225 Wis. 2d 1, 9, 591 N.W.2d 156 (1999).

¶ 27.   Elo contends that it is neither "defunct" nor "dissolved" under WIS. STAT. § 187.15(4) because it is an ongoing congregation practicing the Methodist religion under its interpretation of the Bible and the doctrinal rules of the DISCIPLINE. The trial court adopted this argument in rejecting the UMC's motion for summary judgment and dismissing its complaint. We reject that approach as too simplistic, contrary to the legislative intent reflected in the words of the statute and elevating form over substance.

¶ 28.   Again, the question in this case is not which party is more doctrinally pure under the tenets of the Methodist religion. Rather, the issue is whether the hierarchical relationship between Elo and the UMC has been severed such that Elo no longer functions as a local church of the UMC. The undisputed facts demonstrate that this situation has occurred. By its resolution of June 15, 1997, Elo voted to "disavow ourselves from the United Methodist Conference and to rescind any and all relationships with said Conference, thereby declaring ourselves as a non-affiliated and

independent Christian Church." This was followed by Elo's further resolution not to honor its financial obligations to the annual conference and its appointment of a committee to negotiate the terms of the dissolution.

¶ 29.   We cannot imagine a clearer statement and demonstration of Elo's intent to dissolve its ties with the UMC. While Elo continues to function as a religious congregation and professes itself as a Methodist church, this does not alter the fact that Elo, by its own words and actions, dissolved its ties with the UMC and invited the UMC response declaring that Elo no longer served the purpose for which it was organized and seeking to take control and ownership of the Elo property. While Elo continues to endure, the dissolution of its relationship with the UMC rendered it defunct as a local church *of the UMC*.

¶ 30.   WISCONSIN STAT. § 187.15(4) is not designed to   resolve  schisms between  local churches   and the UMC. Rather, the statute dictates what happens to the title of property held by a local church when such schism produces dissolution of the hierarchical relationship between the two factions. Such dissolution has occurred in this case and it has rendered Elo defunct within the meaning of the statute. By operation of law under the statute, title to the property vested in the annual conference of the UMC.

## CONCLUSION

¶ 31.   We reverse the trial court's dismissal of the UMC complaint and the court's further grant of summary judgment to Elo. We hold that the UMC is entitled to summary judgment. We remand with directions that the court enter summary judgment in favor of UMC.

*By the Court.*—Judgment reversed and cause remanded with directions.