The WISCONSIN CONFERENCE BOARD OF TRUSTEES OF the
UNITED METHODIST CHURCH, INC., Plaintiff-Appellant,

v.

Ronald CULVER, Loretta Konrad, Lucille Krentz,
Arthur Lamonska, Gordon Trapp, John Does 1
through 20 and Jane Does 1 through 20, Defendants-
Respondents-Petitioners.

Supreme Court

*No. 99–1522. Oral argument January 31, 2001.—Decided May
31, 2001.*

2001 WI 55

(Also reported in 627 N.W.2d 469.)

For the defendants-respondents-petitioners there were briefs by *Lan Waddell* and *Waddell & Pavia*, Columbus, and oral argument by *Lan Waddell*.

For the plaintiff-appellant there was a brief by *Jon G. Furlow, Mary C. Turke* and *Michael Best & Friedrich, LLP*, Madison, and oral argument by *Jon G. Furlow*.

An amicus curiae brief was filed by *Kevin J. Sjostrom* and *Brusky & Sjostrom, S.C.*, Wauwatosa, on behalf of Katrine L. Anderson, Judy Bell, Ernest Cutting, Alyson Janke, Michael B. Lukens, and Clifton Kirkpatrick as stated clerks of the Presbytery of Northern Waters, the Milwaukee Presbytery, the Twin Cities Area Presbytery and the Synod of Lakes and Prairies, the John Knox Presbytery, the Winnebago Presbytery of the Presbyterian Church (USA), the Presbyterian Church (USA), and the United House of Prayer for all People of the Church on the Rock of the Apostolic Faith.

¶ 1. ANN WALSH BRADLEY, J. This case requires us to address the ownership of church property when a local Methodist church breaks away from the Methodist denomination. The defendants, the trustees of a local church formerly known as the Elo United Methodist Church, seek review of a published decision of the court of appeals reversing the summary

judgment determinations of the circuit court.[1] The court of appeals concluded that the plaintiff, the Wisconsin Conference Board of Trustees of the United Methodist Church (Conference), was entitled to the property because the local church's withdrawal from the United Methodist Church (UMC) rendered it a "defunct" or "dissolved" local Methodist church under Wis. Stat. § 187.15(4) (1997–98).[2] Because we agree with the court of appeals' interpretation of the statute and conclude that title to the property at issue vests in the Conference, we affirm the decision of the court of appeals.

¶ 2. We preface our discussion with the following undisputed facts that provide a brief history of the local church, its ties to the Methodist denomination, the local church property, and the events preceding our review.

¶ 3. In the 1840s, a congregation of Methodists formed in the town of Utica in Winnebago County. The group began meeting in members' homes, and by the late 1840s was a recognized Methodist Episcopal church, known as the Elo church. The Elo church was a member church of the Liberty Prairie Circuit, a group of local churches organized by the Wisconsin Conference of the Methodist Episcopal Church. That statewide conference was responsible for appointing a minister to serve the congregations within the circuit.

¶ 4. The property at issue today came to be used by the Elo congregation following an 1860 conveyance.

---

[1] *Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2000 WI App 132, 237 Wis. 2d 343, 614 N.W.2d 523 (reversing judgment of the Circuit Court for Winnebago County, William H. Carver, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise indicated.

An 1860 deed documents the transfer of ten acres of land in the town of Utica from Isaac and Abigal Corliss to the "Trustees of the Methodist Episcopal Church of the Liberty Circuit Wisconsin Conference." The trustees purchased the property for $400, and it was deeded to the trustees "in Trust for the Methodist Episcopal Church."[3]

¶ 5. Subsequent to the conveyance, the Elo congregation built a church upon the land. The church was eventually called the Elo Methodist Church. Sometime later, a parsonage was erected to house the acting minister.

¶ 6. The Elo Methodist Church continued as a Methodist Episcopal church well into the twentieth century. It maintained its affiliation with organized Methodism through successive mergers between the Methodist Episcopal Church and other Methodist branches. In 1939 the Methodist Episcopal Church merged with other Methodist denominations to become the Methodist Church. Another merger in 1968 created the United Methodist Church.

---

[3] The deed conveying the property and creating the trust also provided for the disposition of the property under certain conditions. Under the deed, the trustees could dispose of the property upon the failure of the statewide conference to provide a minister, the cessation or extinction of the Methodist Episcopal Church of the Liberty Prairie Circuit, or a departure of a majority of the members as a result of "nonaction or unrightous [sic] action." Should any of these occur, the deed provided that a two-thirds vote of those who donated the money to purchase the land would allow the trustees to sell the property and distribute the proceeds among the subscribers or to donate or hold in trust the property for another "Evangelical Church."

As far as we know, none of the contingencies described in the deed was encountered, and the record contains no indication of a two-thirds vote of the original donors.

¶ 7. The UMC is organized in a hierarchical fashion. The Conference is its state-level organizational body. The relationship among the national, regional, and local levels of the denomination is governed by the *Book of Discipline of the United Methodist Church*, which sets forth the doctrinal law of the denomination.

¶ 8. In 1970 members of the Elo church filed a certificate of incorporation organizing itself as a "religious society of the Wisconsin Conference of the United Methodist Church." Under its certificate of incorporation, the Elo church became the Elo United Methodist Church, a duly incorporated religious society under Wis. Stat. § 187.01.

¶ 9. The Elo church continued its affiliation with the UMC until 1997. In that year, a dispute arose between the congregation and the UMC over certain doctrinal matters. On June 25, 1997, the Elo church passed, by a near-unanimous vote of the congregation, the following resolution withdrawing from the UMC:

1. Whereas: The United Methodist Conference has acted to create a major doctrinal change and, in spite of an attempt to change that position through existing procedures, has reaffirmed its position on those matters

 and

2. Whereas: We, as a "Christian Bible based" congregation cannot reconcile their actions with the "Scripture" as we understand it:

Therefore

 We, as a Christian Church, hereby disavow ourselves from the United Methodist Conference and do rescind any and all relationships with said Conference, thereby declaring ourselves as a non-affiliated and independent

399

Christian Church, effective as of this date, June 25, 1997.

¶ 10. Thereafter, the Elo church changed its name to the Elo Evangelical Church. The church continued to operate as an independent, nondenominational congregation. The congregation removed all UMC insignia and signage on the church property and also refused to continue the financial arrangements it had previously maintained with the UMC, including its share of support for the minister appointed to serve the church and who was housed in the Elo parsonage.[4]

¶ 11. After a period of fruitless attempts at reconciliation with the Elo congregation, the Conference responded to the Elo church's withdrawal from the UMC in December 1998. It resolved that the property held by the Elo church had been "abandoned" under church rules by virtue of the Elo church's disaffiliation. Under the provisions of the *Book of Discipline*, the Conference concluded that it was to assume control of the local church property.

¶ 12. By authorization of the resolution, the Conference filed suit against the Elo trustees individually in February 1999, seeking declaratory and injunctive relief. Its primary contention was that under Wis. Stat. § 187.15(4), the Elo church had become defunct or dissolved, thus entitling the Conference to all property held by the Elo church.[5]

---

[4] We note that after this lawsuit was filed the congregation changed its name again to the Elo Evangelical Methodist Church. They admittedly did this to avoid application of § 187.15(4) and have not reestablished an affiliation with the UMC. Elo does not advance this fact in support of its position.

[5] Although the Conference sued for a declaration of rights as to both the real and personal property held by the Elo trust-

¶ 13. The Elo trustees responded by moving to dismiss the complaint. In addition to claiming that the circuit court lacked the subject matter jurisdiction to resolve this internal church dispute, the Elo trustees claimed that the requirements of § 187.15(4) had not been met. They maintained that because the Elo congregation continued to exist, it could not constitute a "defunct" or "dissolved" church within the dictionary definitions of those terms. The Conference responded with a summary judgment motion claiming that it was entitled to a judgment in its favor because there was no disputed issue of fact that the Elo congregation's resolution to disaffiliate rendered it defunct or dissolved under § 187.15(4).

¶ 14. The circuit court heard both motions together. After examining numerous affidavits and documents submitted with the motion for summary judgment, including the 1860 deed, the circuit court concluded that title to the property was held by the Elo trustees and that § 187.15 is triggered only if the local congregation ceased functioning and abandoned the property. Accordingly, the court entered a judgment dismissing the Conference's complaint.

¶ 15. The Conference appealed and the court of appeals reversed. After explaining that its resolution of an intra-church property dispute is restricted by the

ees, this case has evolved into one solely about the real property in the local church's possession. The court of appeals did not address any personal property. Moreover, the Conference has shifted its focus to the real property to such a great extent that it opens its brief to this court by referencing only the real estate. At no point does it request an award of personal property. Our decision today is thus limited to the real property in question. Additionally, the Conference pursued an action in trespass. That claim is not before us.

First Amendment to a consideration of neutral principles of law, the court of appeals interpreted and applied § 187.15(4). *Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. vs. Culver*, 2000 WI App 132, ¶¶ 13–17, 237 Wis. 2d 343, 614 N.W.2d 523. It concluded that Elo church's disavowal of all ties to the UMC rendered it defunct or dissolved under the statute. *Id.* at ¶ 29. The court explained: "We cannot imagine a clearer statement and demonstration of Elo's intent to dissolve its ties with the UMC. . . .While Elo continues to endure, the dissolution of its relationship with the UMC rendered it defunct as a local church *of the UMC*." *Id.*

I

¶ 16. This case requires us to decide competing motions for summary judgment. While the circuit court resolved this case by granting the Elo trustees' motion to dismiss and denying the Conference's motion for summary judgment, the circuit court considered matters outside the pleadings in deciding the motion to dismiss. We thus treat the motion as one for summary judgment and the circuit court's judgment as one entered upon the grant of that motion. *See* Wis. Stat. § 802.06(3); *Schwab v. Timmons*, 224 Wis. 2d 27, 35, 589 N.W.2d 1 (1999).

¶ 17. We review a motion for summary judgment using the same methodology as employed by the circuit court. *Stelpflug v. Town of Waukesha*, 2000 WI 81, ¶ 17, 236 Wis. 2d 275, 612 N.W.2d 700. Summary judgment is granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2); *Stelpflug*, 2000 WI 81 at ¶ 17.

¶ 18. Ultimately, we conclude that resolution of the competing motions for summary judgment is a matter of interpretation and application of § 187.15(4). We must determine whether the local church's withdrawal from the UMC rendered it a defunct or dissolved local Methodist church under that statute. Such a question of statutory interpretation is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. *Stockbridge Sch. Dist. v. Dep't of Pub. Instruction Boundary Appeal Bd.*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996).

## II

¶ 19. We begin our discussion by addressing the appropriate constitutional framework for our analysis. This court has not been asked to resolve a church property dispute in many years.[6] However, in recent decades many courts have wrestled with the appropriate means of resolving property disputes between churches and among competing factions within a church under the Establishment Clause of the First Amendment to the United States Constitution. The Establishment Clause, as applied to the states through the Fourteenth Amendment, prohibits states from making any law "respecting [the] establishment of religion." U.S. Const. amend. I.[7] The United States Supreme Court has visited the question on several

---

[6] The last occasion was in 1940. *See Kerler v. Evangelical Emmanuel's Church*, 235 Wis. 209, 292 N.W. 887 (1940).

[7] The religion clauses of the First Amendment, the Establishment and Free Exercise Clauses, read in their entirety: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const.

occasions and has outlined constitutional means of judicial resolution of church property disputes.

¶ 20. In exploring the Establishment Clause limitations on judicial resolution of disputes over church property, the Supreme Court has explained that civil courts may resolve such disputes, provided that they do not entangle themselves in the business of "establishing" churches by deciding matters of doctrine and practice. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969). Thus, the foremost limitation imposed by the First Amendment is that we refrain from resolving doctrinal disputes. *Jones v. Wolf*, 443 U.S. 595, 602 (1979). Should we be faced with a dispute that hinges on an issue of religious doctrine or polity, we must defer to the resolution of the highest authority of a hierarchical church organization. *Id.*

¶ 21. We address church property disputes under the neutral principles of law approach outlined by the Supreme Court in *Jones v. Wolf*. Under this approach, we may base our determination upon any number of neutral legal principles, including "the language of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property." 443 U.S. at 603. Adherence to neutral principles will avoid an entanglement with religion that would run afoul of the Establishment Clause.[8]

---

amend. I. They were made applicable to the states in *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

[8] A recognized alternative to the neutral principles approach described in *Jones v. Wolf*, 443 U.S. 595 (1979), is deference to the highest church authority in a hierarchical church in resolving church property disputes. *See Maryland*

¶ 22. In the case at hand we resolve the church property dispute by resort to a state statute governing the holding of church property. In a concurrence often cited in church property dispute cases, Justice William Brennan set forth various constitutional approaches that states may employ to resolve church property disputes, including "special statutes governing church property arrangements in a manner that precludes state interference in doctrine." *Maryland and Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 370 (1970) (Brennan, J., concurring). The statute before us, Wis. Stat. § 187.15, is such a statute.

---

*and Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 368–69 (1970) (Brennan, J., concurring); *Watson v. Jones*, 80 U.S. 679, 727 (1871). However, rather than defer to the church hierarchy on secular and legal matters that we are fully capable of resolving under neutral principles of law, we choose, consistent with the constitutional directives of the Supreme Court, to defer to church hierarchy only when the question before us involves matters of doctrine or church polity. *See Jones*, 443 U.S. at 602. While the Conference suggests that some form of deference is due to its internal determinations in this case, we conclude that because resolution of this case does not require an inquiry into doctrine or polity, deference is unnecessary.

The Elo trustees suggest that we should adopt an approach that would give effect to the will of the majority of the congregation. While the Supreme Court has suggested that a rule of presumptive majority representation is compatible with a neutral principles approach, *id.* at 607–08, deference to the majority is a concept appropriate for a case involving a church with a congregational, rather than a hierarchical, polity. *See Maryland and Virginia Eldership of the Churches of God*, 396 U.S. at 368–69 (Brennan, J., concurring); *Watson*, 80 U.S. at 724–25.

¶ 23. In this case, we are not concerned with the intra-church dispute that fueled the Elo congregation's departure. Moreover, we have not been invited to determine whether the Elo church has abandoned the UMC by a departure from doctrine. Nor would we accept such an invitation, as such considerations are anathema under the Constitution. *Presbyterian Church,* 393 U.S. at 449–50. Rather than deal in such constitutionally impermissible shades of gray, today's case presents us with the Elo church's unequivocal resolution to withdraw from the Conference and the UMC.

¶ 24. Because § 187.15 governs the church property arrangement in the dispute before us and because we need only interpret and apply the terms of the statute in wholly legal and secular terms, we do not wade into doctrinal waters with today's decision. The question before us is whether the Elo church's disaffiliation renders it a defunct or dissolved local Methodist church within the meaning of § 187.15(4). We now turn to that question.

## III

¶ 25. This case began as an action under § 187.15(4) and was presented to the circuit court and court of appeals as a question of interpretation and application of that statute.[9] While the parties spent much of their briefs and oral argument addressing trust law principles, the terms of the UMC *Book of Discipline,* and the language of the 1860 deed, we believe the crux of the dispute between the parties and

---

[9] Although the Conference's complaint referenced the *Book of Discipline* in a manner suggesting that it was an alternative theory under which it was proceeding, its summary judgment motion was based on its claimed right to the property under the § 187.15(4).

the determinative issue in resolving the parties' competing motions for summary judgment is the meaning of "defunct" and "dissolved" under § 187.15(4).

¶ 26. Our sole purpose when interpreting a statute is to discern the intent of the legislature. *Stockbridge Sch. Dist.*, 202 Wis. 2d at 219. When doing so, we begin with the statutory language. *Id.* If the language of the statute fails to clearly convey the legislature's intent, we will resort to extrinsic aids. *Id.* Courts should resolve statutory ambiguities so as to advance the legislature's basic purpose in enacting the legislation. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 288, 548 N.W.2d 57 (1996).

¶ 27. The statutory provision that we must interpret, § 187.15(4), reads:

> Whenever any local Methodist church or society shall become defunct or be dissolved the rights, privileges and title to the property thereof, both real and personal, shall vest in the annual conference and be administered according to the rules and discipline of said church.

This provision was created by the legislature in 1923. § 3, ch. 158, Laws of 1923. While § 187.15 has been in existence for over three-quarters of a century, neither this court nor the court of appeals has been asked to interpret or apply the statute prior to the present case.[10]

---

[10] Wisconsin Stat. § 187.15 had numerous predecessors controlling the incorporation of Methodist societies; however, none of them contained a provision similar to subsection (4) that provided for the passage of property from a defunct or dissolved local church to the statewide conference. *See* Wis. Stat. § 187.15(5) (listing prior Methodist incorporation statutes). The

¶ 28. Both parties contend that the plain language of the statute as applied to the facts of this case warrants a decision in their favor. On the one hand, offering several dictionary definitions, the Elo trustees maintain that the words "defunct" and "dissolved" unambiguously require that the Elo church must "cease to exist" or be "dead" or "extinct" to trigger the statute. They advance what they term an "empty church" definition and contend that as long as the church exists as a practicing congregation it cannot be considered defunct or dissolved, regardless of its denominational affiliation.

¶ 29. The Conference, on the other hand, accepts the Elo trustees' plain language reading of defunct and dissolved but argues that we must read that phrase with reference to the phrase "local Methodist church or society." Under the Conference's plain language reading of the statute, because the Elo church ceases to exist as a local Methodist church or society, it is defunct or dissolved. The court of appeals interpreted the statute in this manner.

¶ 30. We are persuaded by the Conference's and the court of appeals' interpretation of the statute. The words "defunct" or "dissolved" cannot be read in isolation. They are modified by the term "local Methodist church or society." The existence of the local Methodist church or society is defined by its denominational affiliation, not solely by its continuation as an active congregation. The cessation of ties to the UMC and the

first state law concerning the incorporation of Methodist churches and the trust relationship between the local church and the denomination was passed in 1849. Ch. 89, Laws of 1849.

The provision at issue has been amended only once. In 1939, the language of the statute was changed to reflect the 1939 denominational merger. *See* ch. 403, Laws of 1939.

statewide conference renders a local Methodist church or society defunct or dissolved under the statute.

¶ 31. This reading of the statute recognizes the overall purpose of the statute. The statute is designed as a whole to accommodate the Methodist organizational structure and its system of property management. The United Methodist Church is organized in a hierarchical fashion and manages its property through a system of trusts. This organizational structure was explained by another court addressing a similar dispute over UMC property:

> In the hierarchical type of church the local congregation is an organic part of a larger church body and is subject to its laws, procedures, and organs according to an ascending order of authority. It does not enjoy local autonomy. Its doctrine is defined by that of the parent body and its property, while peculiarly a matter of local enjoyment, is held for uses consistent with the written rules, doctrines and practices of the denominational parent church.

*Brady v. Reiner*, 198 S.E.2d 812, 827 (W. Va. 1973).[11]

¶ 32. Section 187.15 recognizes these features of organized Methodism and codifies the manner in which the UMC maintains control over local church property. It does so by organizing the property arrangement among three levels of the church hierarchy: the denominational church (UMC), the Conference, and the local

_____

[11] The West Virginia court also concisely explained the other common type of church polity, the congregational polity: "The congregational polity, by contrast to the hierarchical, features local congregational autonomy as its central characteristic. It is premised on the idea that the local congregation is the highest authority in all matters of doctrine and usage." *Brady v. Reiner*, 198 S.E.2d 812, 827 (W. Va. 1973).

church. Under the statute, the trust provisions operate to protect the UMC's property interest in property held by a local Methodist church. § 187.15(1) & (3). In the absence of such a local Methodist church, however, the statute requires that the Conference take title and hold the property in trust for the UMC. § 187.15(4). Thus, the statute envisions that the Conference will fill the shoes of the local trustees to continue to hold the property in trust for the UMC. Were we to read the statute to allow the property to be removed from this arrangement and be held by a group that has severed all ties to the UMC, we would frustrate the statute's purpose.

¶ 33. The Elo trustees argue this reading of the statute ignores other provisions of chapter 187 employing "defunct" and "dissolved" and defining "defunct" in a manner consistent with its "empty church" interpretation. They contend that we must read § 187.15(4) in pari materia with § 187.10(9) and § 187.11, which provide that a local church is deemed defunct when "it shall have ceased to maintain at least one regular service per month for a period of two years." Wis. Stat. § 187.10(9) (Congregational church) and § 187.11 (Church of Christ); *see also* § 187.08. Such provisions lend credence to the trustees' interpretation. However, we note that neither § 187.10(9) nor § 187.11 provide any guidance in defining "dissolved." Additionally, we do not believe the time limitations in those statutes require that the term "defunct" be exclusively defined as abandonment of the property for a lengthy period of time.

¶ 34. Turning to the facts of this case, there is no disputed issue of fact as to whether the Elo church is a defunct or dissolved local Methodist church under our construction of the statute. It is not disputed that the Elo church was formerly a local Methodist church. It is

also beyond question that the Elo congregation severed all ties to the UMC and the Conference. Because these matters are beyond dispute, summary judgment should properly be granted in favor of the Conference.

¶ 35. We reiterate that it is the Elo church's unequivocal withdrawal from the UMC that allows us to apply the statute to the facts of this case. In the absence of such a clear severance of relations by the local church, we do not believe § 187.15(4) would be the appropriate means of resolving the property dispute. As the court of appeals explained, the statute is not "designed to resolve schisms between local churches and the UMC." *Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc.*, 2000 WI App 132 at ¶ 30. It is, however, designed to dictate the resolution of property rights where there has been a total dissolution of the relationship between the local church and the UMC by the local church as evidenced in the incontrovertible fashion presented in this case.

IV

¶ 36. We next briefly turn to the constitutional issues that the Elo trustees have interjected into the parties' debate. In seeking the review of this court, the Elo trustees have for the first time raised questions of the constitutionality of the statute. The arguments presented are not facial challenges to the statute. Rather, they raise these arguments under the mantle of statutory construction, arguing that we must construe the statute to avoid the constitutional problems that they propose are created by our construction of the statute.

¶ 37. The Elo trustees generally argue that the interpretation of § 187.15(4) we adopt today renders

411

the statute "coercive," "confiscatory," and "preferential." They identify, but do not develop, numerous constitutional challenges, concluding the statutory interpretation results in a deprivation of property without due process because of the statute's alleged retroactivity[12] and that it constitutes an unconstitutional taking and an impermissible "preference by law" to the UMC in violation of Article I, Section 18 of the Wisconsin Constitution. They also propose that the construction raises "substantial objections" under the First Amendment.

¶ 38. None of these constitutional arguments is presented in depth. They are referenced in a few paragraphs and are conclusory in nature. The arguments do little more than allege that the construction of the statute violates the provisions at issue. We need not address arguments presented in this fashion. *See Block v. Gomez*, 201 Wis. 2d 795, 811, 549 N.W.2d 783 (Ct. App. 1996) (refusing to address amorphous and insufficiently developed arguments). As our court of appeals has explained:

> Constitutional claims are very complicated from an analytic perspective, both to brief and to decide. A one or two paragraph statement that raises the specter of such claims is insufficient to constitute a valid appeal of these constitutional issues to this court. For us to address undeveloped constitutional

---

[12] The trustees essentially contend that a law enacted in 1923 cannot be retroactively applied to property deeded in 1860. This argument ignores both the 1970 incorporation, by which the Elo church voluntarily became subject to chapter 187, and Wis. Stat. § 187.02, under which churches are "grandfathered" under the law in existence at the time of their creation, unless they affirmatively choose, by the act of incorporation, to become subject to chapter 187.

claims, we would have to analyze them, develop them, and then decide them. We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs.

*Cemetery Servs., Inc. v. Dep't of Reg. & Licens.*, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998). Similarly, we cannot allow parties to simply raise the specter of a constitutional violation through insufficiently developed arguments in order to garner an interpretation of a statute in their favor.

## V

¶ 39. Even if we were to address these undeveloped constitutional arguments as applied to our statutory construction and interpret the statute as advanced by the Elo trustees, the trustees still would not be entitled to the property under other neutral principles of law recognized in *Jones v. Wolf*. While this case was presented below as solely a matter of statutory law, the parties have gone to some lengths to address their rights under the neutral principles of trust law and the 1860 deed. The record is sufficiently developed to allow us to address the parties' rights to the property under the principles they debate. We agree with the conclusion of the court of appeals that the UMC has a beneficial interest in the property. *Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc.*, 2000 WI App 132 at ¶ 23 n.7. Thus, even in the absence of § 187.15(4), the trustees are not entitled to retain the property for whatever purposes they see fit without regard to the interests of the Conference and the UMC.

¶ 40. The 1860 deed created an express trust for the benefit of the UMC, and the property at issue in

this case has been held in trust for the Methodist denomination since its original conveyance. The deed provides that the property was conveyed to the original local trustees "in Trust for the Methodist Episcopal Church."[13] While the Elo trustees maintain that this created a trust for the local church, we find such a reading unreasonable. The local church is not mentioned in the deed. The property was deeded to the trustees of the Liberty Prairie Circuit and the property was to be held in trust for the denomination, the Methodist Episcopal Church. As a result of the successive denominational mergers, the United Methodist Church is the successor in interest to the Methodist Episcopal Church's beneficial interest in the trust.[14]

¶ 41. The Elo trustees rely on a provision of the *Book of Discipline* that establishes that local Methodist churches were not required to "alienate or change the title to property contained in its deed or deeds" as a result of the 1968 merger that created the UMC.[15] They assert that this "deed-saving" language prevents the conversion of their local church property to trust property. The trustees' argument presupposes that the original deed conveyed to them an interest in the property greater than that of a trusteeship for the benefit of

---

[13] The language creating the trust is consistent with the language of the law controlling Methodist Episcopal corporations at the time of the conveyance. *See* ch. 89, Laws of 1849. That legislation addressed property held "in trust for the Methodist Episcopal Church," referring to the denominational church. *Id.*

[14] *See, e.g., Book of Discipline of the United Methodist Church* ¶ 1 (1996) ("The united Church, as thus constituted, is, and shall be, the successor of the two uniting churches.").

[15] *Book of Discipline of the United Methodist Church* ¶ 6 (1996).

the denomination. As we have explained, however, a beneficial interest for the denomination was created by the deed when the property was originally conveyed. There was no change in the Elo trustees' property interest as a result of the 1968 merger. The local church trustees continued to hold the entrusted property for the benefit of the denomination.[16]

¶ 42. Because the property is burdened with this trust, under which the property at issue is held for the benefit of the UMC, it is beyond the powers of the Elo trustees to disassociate the property from the UMC. We explained long ago in a similar church dispute that ordinary trust principles prevent the diversion of property in the manner attempted by the Elo trustees:

> A religious corporation holding property charged with a trust for certain purposes can no more divert it to other and inconsistent uses, even by due corporate actions, than can any other trustee.

*Cape v. Plymouth Congregational Church*, 130 Wis. 174, 179–80, 109 N.W. 928 (1906).

¶ 43. This is in accord with the rule of other states that have addressed the attempted removal of entrusted property by a local congregation that secedes from a hierarchical church. The general rule in this regard has been expressed as follows:

---

[16] At oral argument, the Elo trustees emphasized their refusal to honor the request for a trust deed made by the UMC in the late 1960s. Because we conclude that the property was held in trust since its original conveyance in 1860 and thus already held in trust for the UMC at the time of this request for a trust deed, we find no significance in the local church's refusal to proffer a new trust deed.

415

[A]lthough the members of a local church may secede from a hierarchical system, they cannot secede and take the church property with them.

*New York Annual Conf. of the United Methodist Church v. Fisher*, 438 A.2d 62, 70 (Conn. 1980) (citing cases).

¶ 44. In sum, we conclude that as a consequence of the Elo congregation's unequivocal withdrawal from the UMC and the Conference, the Elo church was rendered a defunct or dissolved local Methodist church within the meaning of Wis. Stat. § 187.15(4). By operation of that statutory provision title to the property at issue vests in the Conference, and summary judgment must be granted in its favor. Accordingly, we affirm the decision of the court of appeals, reversing and remanding this matter to the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 45. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. Today's decision rests upon a reasonable interpretation of Wis. Stat. § 187.15, governing the disposal of Methodist church property. I agree with the majority opinion that the application of the statute represents neither an unconstitutional taking nor an impermissible preference for church hierarchy, the bases on which the Elo trustees ground their appeal. Nevertheless, I would remand the case for resolution of this property dispute on non-statutory grounds.

I

¶ 46. As the majority opinion concludes, the 1860 deed creates a trust in favor of the Methodist Episcopal

Church.[1] Whether the United Methodist Church (UMC) is the successor in interest to the trust in favor of the Methodist Episcopal Church appears to be a disputed question of fact at this summary judgment stage, contrary to the majority's conclusion.[2]

¶ 47. The Elo trustees rely on the *Book of Discipline of the United Methodist Church*, which states as follows:

> Nothing in the Plan of Union at any time after the union is to be construed so as to require any local church or any other property owner of the former The Evangelical United Brethren Church or the former The Methodist Church to alienate or in any way to change the title to property contained in its deed or deeds at the time of union.[3]

They further allege that the UMC requested, and was denied, a new deed following the 1968 merger. According to the Elo trustees, the UMC's conduct indicates that it did not have a beneficial interest in the property.

¶ 48. Because this case comes to us on review of the UMC's motion for summary judgment, this court must draw all reasonable inferences in favor of the non-moving party, the Elo trustees.[4] I conclude that the Elo trustees have succeeded in raising a reasonable inference that the UMC did not automatically become the successor in interest to the Methodist Episcopal Church under the 1860 deed. The majority's reliance

---

[1] *See* majority op. at ¶ 40.

[2] *See* majority op. at ¶ 40.

[3] *Book of Discipline of the United Methodist Church*, ¶ 6 (1996).

[4] *See Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 56, 236 Wis. 2d 435, 613 N.W.2d 142.

on the first paragraph of the *Book of Discipline*, the meaning and relevance of which have not been briefed, does not convince me otherwise.

¶ 49. Because a disputed issue of material fact exists regarding the UMC's right to property held in trust for the Methodist Episcopal Church, I would remand the case to the circuit court for resolution of this issue. If the case for resolution on trust principles is as strong as the majority contends, remand would impose but a small burden on the parties and the circuit court. Moreover, a resolution of this property dispute on the basis of trust principles involves no risk of entanglement in church doctrine.

## II

¶ 50. I am concerned that Wis. Stat. § 187.15 may be unconstitutional. Admittedly, the Elo trustees never raised this argument, and their failure to challenge the existence (as opposed to the UMC's interpretation) of Wis. Stat. § 187.15 can be construed as waiver. Because the issue was not briefed, I do not write to decide this issue. I do, however, express a question about the constitutionality of Wis. Stat. § 187.15.

¶ 51. Chapter 187 is a patchwork of statutes governing religious property, some directed toward specific religious denominations, others directed toward religious societies generally. While Methodist church property is governed by Wis. Stat. § 187.15, the church property of religious societies that do not have the benefit of a specific statute is governed by other provisions of Chapter 187, including Wis. Stat. § 187.08.

¶ 52. The differences between Wis. Stat. §§ 187.15 and 187.08 should give this court pause about resolving this dispute by using a statute that

applies specifically to Methodist church property, when other religious societies cannot avail themselves of a similar statutory remedy. I wonder whether Justice Brennan's call for "special statutes governing church property arrangements" envisioned a statutory scheme that singles out individual religions and leads to varied results in church property disputes.[5]

¶ 53. The majority opinion further suggests that Wis. Stat. § 187.15 "codifies the manner in which the UMC maintains control over local church property."[6] This proposition may well be correct, but if the statute merely codifies the church's system of property management, this case can be resolved without resort to the statute.

¶ 54. For the reasons set forth, I dissent.

¶ 55. JON P. WILCOX, J. *(dissenting)*. I concur with Chief Justice Abrahamson's dissent; I agree that Wis. Stat. § 187.15 (1997–98) is problematic. I write separately only to emphasize that this dispute should be remanded to be resolved on the terms of the deed.

¶ 56. Although the majority characterizes the record as "sufficiently developed to allow us to address the parties' rights to the property," I disagree. Majority op. at ¶ 39. While the United Methodist Church (UMC) may or may not have a "beneficial interest" in the property, if such an interest does exist, it is unclear as to its nature and extent.[1] *Id.* The deed states that the property is to be held:

---

[5] *See* majority op. at ¶ 22.

[6] *See* majority op. at ¶ 32.

[1] It is undisputed that the UMC requested a trust deed for the property in 1968 when The Methodist Church merged with the Evangelical United Brethren to create the UMC and Elo refused the UMC's request. *Wisconsin Conf. Bd. Of Trs. of the*

in Trust for the Methodist Episcopal Church. . .upon the express condition and understanding that should the Wisconsin Conference of the Methodist-Episcopal Church neglect to send a minister to said Liberty-Prairie Circuit or should the Methodist Episcopal Church of the Liberty-Prairie Circuit become extinct or cease to exist from any cause or should a majority of the members of said church in said Circuit leave in consequence of nonaction or unrightous [sic] action on the subject if having by the general conference of the Methodist Episcopal Church then by a vote of two-thirds of the subscribers to a certain subscription paper bearing date the first day of March, Eighteen hundred Sixty. . . .

In my view, this language qualifies any beneficial interest that the UMC may have. It indicates that the grantor envisioned that a dispute could arise between the local church [Elo] and the hierarchical church [UMC] and created a contingency for such a scenario. Nevertheless, the language of the deed may very well be deemed ambiguous, requiring extrinsic evidence to discern the intent of the grantor. *See Edlin v. Soderstrom*, 83 Wis. 2d 58, 69, 264 N.W.2d 275 (1978) ("The construction of the deed is a matter of law unless there is an ambiguity requiring words or terms to be construed by extrinsic evidence, in which event the question becomes one of fact."). If the language of the deed is judged ambiguous, the record is clearly incomplete to resolve this dispute. The majority opinion implies as much by stating "[a]s far as we know, none of the contingencies described in the deed was encoun-

---

*United Methodist Church, Inc. v. Culver*, 2000 WI App 132, ¶ 5, 237 Wis. 2d 343, 614 N.W.2d 523. Such a request is inconsistent with unequivocal ownership of a beneficial interest as the majority portrays. Majority op. at ¶ 39.

tered, and the record contains no indication of a two-thirds vote of the original donors." Majority op. at ¶ 4 n.3. The record is insufficiently developed to determine if any of the contingencies in the deed are met and there is no indication of a two-thirds vote of possible successors to the "subscribers" because the circuit court ruled in favor of the UMC on summary judgment.

¶ 57. Accordingly, this case should be remanded to determine whether the UMC has a beneficial interest and the nature and extent of any such beneficial interest in accordance with the neutral principles doctrine espoused in *Jones v. Wolf*, 443 U.S. 595, 603 (1979). The circuit court can determine whether the UMC is entitled to the property by first looking to the deed. If the circuit deems the language in the deed is ambiguous, it can then look to extrinsic evidence. Thus, I agree with Chief Justice Abrahamson that this case can be resolved without resorting to § 187.15.

¶ 58. For the reasons set forth above, I respectfully dissent.