COURT OF APPEALS
DECISION
DATED AND FILED

October 2, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP187**

Cir. Ct. No. **2018SC2745**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

MARC STEVEN ROEHL,

PLAINTIFF-APPELLANT,

V.

OCWEN LOAN SERVICING LLC,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Fond du Lac County: RICHARD J. NUSS, Judge. *Affirmed*.

¶1 GUNDRUM, J.[1] Marc Roehl appeals pro se from the circuit court's grant of Ocwen Loan Servicing, LLC's motion to dismiss Roehl's complaint for

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

failure to state a claim upon which relief may be granted. For the following reasons, we affirm.

¶2 Since Roehl does not explain the background and underpinnings of his action in his briefing, we glean what we can from documents he submitted with his complaint. Doing so, it appears that on May 16, 2018, a debt collector mailed Roehl a letter which stated that Roehl owed Ocwen Loan Servicing, LLC, "as servicer for U.S. Bank National Association," $142,805.45 in relation to a loan. The letter informed Roehl that if "you request proof of the debt or the name and the address of the original creditor ..., the law requires [the debt collector] to suspend [its] efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you." Roehl responded on June 9, 2018, by sending Ocwen a lengthy document he titled as a "qualified written request" (QWR) purporting to seek information related to the debt. By letter dated June 20, 2018, Ocwen responded stating that it had received Roehl's inquiry regarding the loan and would respond to it by July 19, 2018, or provide Roehl with an update in advance of that date. An affidavit Roehl submitted with his complaint in this action indicated that he "allowed" Ocwen to extend its time to respond to July 19, 2018, but that the time "expired."

¶3 According to Roehl's affidavit, on August 7, 2018, he mailed to Ocwen a "Notice of Fault in Dishonor and Opportunity to Cure" indicating that Ocwen was "at fault" and that the notice was Roehl's "good faith offer [t]o extend the time by an additional 7 days from the date of delivery" to give Ocwen "an opportunity to make the **required** presentment and to cure [Ocwen's] fault." The notice continued: "Should [Ocwen] fail, refuse or neglect to respond to this Notice of Fault and Opportunity to Cure, [Roehl] will enter a **Notice of Default**, as second witness, upon the Lender. All sums due as expenses and Penalties, and

orders to release all liens, and remove all negative credit items, are effectively due upon default." The affidavit further indicates Roehl "did not receive the required point by point response with a bona fide certified Notorial Jurat, or a signed sworn affidavit, within the time requested."

¶4  Roehl next mailed to Ocwen, on August 27, 2018, a "Notice of Default in Dishonor," in which Roehl indicated that

> By the terms and conditions of the agreements contained in [the QWR and "Notice of Fault and Opportunity to Cure"], [Ocwen] was under the obligation to timely and in good faith provide full validation and verification of the debt and ALL items, point by point, within the [QWR], under penalty of perjury within 7 days, as described in the Notice of Fault and Opportunity to Cure.

This notice went on:

> [Ocwen's] failure to honor the offer places [Ocwen] at Default. [Roehl] has now entered a **Notice of Default in Dishonor**, as second witness, upon [Ocwen]. All sums due as expenses and Penalties, and orders to release all liens, and remove all negative credit items, are effectively due upon this default.

This notice proclaimed that "For [Ocwen's] failure, refusal, or neglect in the presentment of a verified response to the Presentment and to the **Notice of Fault in Dishonor**, [Ocwen] thereby acquiesce[s] and tactily agree[s] with all terms, conditions and stipulations set forth within the **Notice of Fault in Dishonor**." Roehl's affidavit concludes:

> The failure of Ocwen Loan Servicing LLC and/or all agents, to respond to, the original QWR completely with a complete verified claim, and including a Notorial Jurat or signed sworn affidavit, and all subsequent presentments, confirms, these agreements, the bill of $6,543.75, and all demands for release of all liens and/or interests.

3

¶5　Roehl filed this small claims court action against Ocwen on October 12, 2018. His entire statement of facts reads:

> Failure to respond fully, correctly and timely, a QWR that was received by Defendant on June 11, [2018]. Failure to respond to Notice of Fault and Opportunity to Cure, received by Defendant August 10, [2018]. Final Failure to respond to Notice of Default including a bill for $6,543.75. Failure to remit payment in 10 day[s] of receipt of bill.

Ocwen moved to dismiss Roehl's complaint for failure to state a claim upon which relief may be granted, specifically asserting that Roehl failed to send it a proper QWR and also failed to allege actual damages. Following a hearing on the motion, the circuit court granted it. Roehl appeals.

¶6　We review de novo whether a complaint fails to state a claim upon which relief may be granted. *See* ***Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.***, 2016 WI 48, ¶14, 369 Wis. 2d 351, 880 N.W.2d 681. That said, on appeal, it is the burden of appellant—here Roehl—to demonstrate how the circuit court erred. *See* ***Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. We conclude Roehl has not met that burden.

¶7　At a hearing before the circuit court on Ocwen's motion to dismiss, Roehl professed that "the subject matter and claim, is only about the failure [of Ocwen] to comply to the notice of default in dishonor and the nonpayment of the bill, $6,543.75 …. The subject matter and claim is not the QWR itself, RESPA[2] damages, or the loan." On appeal, he confirms that "[t]he matter before the Court was the, Notice of Default in Dishonor, with an invoice for the damages as a result of the Dishonor."

---

[2] "RESPA" stands for the Real Estate Settlement Procedures Act.

¶8      Roehl's first argument on appeal is that the circuit court lacked subject matter jurisdiction "in the implied cause of action."[3]  He asserts this is so because the matter—which *he* filed in small claims court—relates to his QWR that "is attached to the real property with valuable consideration of more than $10,000, outside the limited jurisdiction of the Small Claims Court."  We quickly dispatch Roehl's jurisdiction assertion.

¶9      To begin, as noted, it was Roehl himself who filed this matter in small claims court, and he did so specifically identifying his claim for damages as precisely $6543.75, so, less than $10,000.  Furthermore, our state supreme court has stated that "the limit imposed on small claims actions is in reference only to the use of expedited and summary procedure for small claims.  It is irrelevant to the subject matter jurisdiction of the court."  *Terry v. Kolski*, 78 Wis. 2d 475, 481 n.1, 254 N.W.2d 704 (1977).  In fact, our state supreme court has clearly stated, "[A] circuit court is never without subject matter jurisdiction."  *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190.  There is no subject matter jurisdiction problem in this case.[4]

¶10     On Ocwen's specific bases for arguing that the complaint failed to state a claim upon which relief may be granted, we agree that Roehl failed to state a claim because he did not allege a recoverable claim for damages.  *See Mekani v.*

---

[3] While it makes little sense to us that Roehl is arguing that the circuit court did not have subject-matter jurisdiction over the very claim which *he* filed against Ocwen (because if that was the case, Roehl's claim would need to be dismissed on that ground alone), we nonetheless consider his jurisdiction assertion.

[4] Somewhat related to the subject-matter jurisdiction issue, Roehl also asserts the circuit court denied him due process in its handling of the case.  Because Roehl fails to sufficiently develop this argument, we do not address it.  *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

*Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 795-96 (E.D. Mich. 2010) (collecting cases) (concluding complaint failed to state a claim under RESPA because it "failed to allege any causal link between Defendant's allegedly inadequate response to [plaintiff's] QWRs and any actual damages suffered"). To begin on this point, Roehl fails to develop a sufficient argument in response to Ocwen's assertion that he failed to plead actual damages. He states only that his attaching of "an invoice" to the complaint was "sufficient for pleading actual damages."

¶11 The attached invoice for $6543.75, titled "Bill for Fees and Cost," includes $1500 for "Failure to report dispute to credit bureaus. FDCPA 807(8)" and another $1500 for "Communications of false information. 18 USC 1001." However, there are no factual allegations or legal theories identified in Roehl's complaint that are clearly related to these purported "violations" and dollar amounts. In short, we do not see in the complaint any basis on which Ocwen could be held liable for these amounts.

¶12 In relation to the remaining $3543.75, Roehl attached a "Record of Time" document to the complaint that identifies him as charging Ocwen $225 per hour for 15.75 hours of his own time spent doing tasks like "Construct and finish QWR, make 3 copies," "Mail QWR copies Washington DC x 3," and "Research [and] start Notice of Fault." To begin, Roehl identifies no basis upon which he could recover for the 7.25 hours of charges before July 19, 2018, as he stated in his affidavit attached to his complaint that he "allowed" for Ocwen's request for an "[e]xtension" to July 19, 2018, for Ocwen to provide a written response to Roehl's self-proclaimed "QWR." He reiterates in his brief-in-chief that he was "agreeable" to the July 19, 2018 extension. There is no indication in Roehl's

complaint or briefing that Ocwen aggrieved him in any actionable way prior to July 19, 2018.

¶13    In the attachment, Roehl breaks down the remaining 8.5 hours as being for "Research [and] start Notice of Fault," "Mail Notice of Fault Campbellsport, WI/File QWR and Notice of Fault Clerk Courts FDL," "Research [and] start Notice of Default," "Complete Notice Default; make copies of Notice time sheet," and "Compile for Mailing [and] Notarizing."  However, nowhere in Roehl's complaint or briefing does he identify or suggest any legal basis for his entitlement to reimbursement for his own time spent for such itemized entries related to his "Notice of Fault" or "Notice of Default."  *See Young v. Shaw*, 165 Wis. 2d 276, 296, 477 N.W.2d 340 (Ct. App. 1991) (pro se litigant can not recover attorney fees).

¶14    Roehl apparently sent Ocwen the aforementioned "Notice of Fault and Opportunity to Cure" and "Notice of Default in Dishonor."  He does not identify where such documents originated from or if they have any "official" origin.[5]  We are aware of no basis to conclude that either notice was legally necessary prior to Roehl's filing of this action.  Roehl identifies no legal basis for why Ocwen would be in any way subject to or bound by these documents or even believe itself in any way obligated to respond to them.  They appear to be an attempt by Roehl to somehow hold Ocwen "accountable" for Roehl's personal determination that Ocwen failed to sufficiently respond to Roehl's purported "QWR" and then to his "Notice of Fault and Opportunity to Cure."  Roehl's

---

[5] A brief internet perusal with these terms, however, identifies various similar documents, which could have provided Roehl with a template.

"Notice of Default in Dishonor" for example refers to an "agreement[]" contained in his earlier "QWR" and "Notice of Fault and Opportunity to Cure" mailings, but there is no identified basis for concluding that Ocwen "agreed" to anything with Roehl.[6]

¶15   Roehl has failed to meet his burden to demonstrate how the circuit court erred.

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] To the extent we have not addressed any other issue raised by Roehl on appeal, we reject that issue because it has been insufficiently developed. *See Wisconsin Conference Bd. of Trs. of United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (we do not address insufficiently developed arguments).