James Olson and Connie Olson, Plaintiffs-
Appellants,†

v.

Auto Sport, Inc., d/b/a Lake Geneva Raceway and
TIG Insurance Company, Defendants-
Respondents.

Court of Appeals

*No. 01–2938. Submitted on briefs May 28, 2002.—Decided
July 24, 2002.*

2002 WI App 206

(Also reported in 651 N.W.2d 328.)

† Petition to review denied 10-21-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John V. O'Connor* of *O'Connor & Willems, S.C.* of Kenosha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Pamela M. Schmidt* of *Whyte Hirschboeck Dudek, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Fifteen-year old James Olson, Jr. was killed while engaged in a truck-racing event at the Lake Geneva Raceway owned by Auto Sport, Inc. His parents, James and Connie Olson, commenced this wrongful death action against Auto

Sport, contending that Auto Sport had illegally employed James or otherwise permitted James to work within the meaning of and in violation of Wisconsin's child labor laws, WIS. STAT. § 103.65 (1999–2000).[1] Based on these allegations, the Olsons argued that Auto Sport was strictly liable pursuant to *Beard v. Lee Enterprises, Inc.*, 225 Wis. 2d 1, 9, 591 N.W.2d 156 (1999) ("An employer who violates the child labor laws is absolutely liable for injuries resulting from the violation."). The circuit court dismissed the Olsons' action at summary judgment. The Olsons appeal.

¶ 2. We uphold the circuit court's grant of summary judgment. Based upon the summary judgment record, we conclude that James was not an employee of Auto Sport at the time of his death and that Auto Sport did not permit James to work at an employment or place of employment within the meaning of WIS. STAT. § 103.65(1) when it accepted his entry fee and allowed him to participate in the truck race.

### BACKGROUND

¶ 3. The relevant facts are undisputed. James paid an entry fee to Auto Sport to participate in a featured truck race at the raceway on June 2, 2000. As he was coming out of a turn on the final lap, James appeared to overcompensate for a momentary loss of control of the truck, resulting in a collision with the outside retaining wall. James was killed in the accident. The Olsons filed this wrongful death action alleging that Auto Sport had employed James at the time of the accident thereby violating WIS. STAT. § 103.65 and WIS. ADMIN. CODE § DWD 270.06(33) by permitting James to

[1] All references to the Wisconsin statutes are to the 1999–2000 version.

engage in employment that may be dangerous or prejudicial to the minor's life, health, safety or welfare. Pursuant to *Beard*, the Olsons claimed that this violation rendered Auto Sport "absolutely liable" for damages. In its answer, Auto Sport denied these allegations.

¶ 4. The Olsons moved for partial summary judgment on the issue of whether Auto Sport had violated the Wisconsin child labor laws. The Olsons relied in part on Auto Sport's admission that it charged entrance fees to spectators, paid prize money to all drivers in the "feature race" in which James participated on June 2, 2000, and issued 1099 tax forms to all drivers who received more than $600 in prize money during a calendar year. Auto Sport filed a cross-motion for summary judgment claiming that the summary judgment record did not support the Olsons' claim that Auto Sport had employed James or otherwise permitted James to work at the raceway within the meaning of the child labor laws. Instead, Auto Sport argued that the summary judgment record established that James was recreating, not working, at the time of the accident.

¶ 5. The circuit court granted Auto Sport's motion for summary judgment. The court's order for judgment stated in relevant part, "Because there was no showing that the plaintiffs' decedent raced as a result of any employment relationship, the defendants did not violate Wisconsin child labor laws, namely [WIS. STAT.] § 103.65(1) and [WIS. ADMIN. CODE] § DWD 270.06(33)." The Olsons appeal.

## *DISCUSSION*

¶ 6. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

WIS. STAT. § 802.08(2). A summary judgment motion presents a question of law that we review de novo. *Wis. Conference Bd. of Trustees of the United Methodist Church, Inc. v. Culver*, 2000 WI App 132, ¶ 25, 237 Wis. 2d 343, 614 N.W.2d 523, *aff'd*, 2001 WI 55, 243 Wis. 2d 394, 627 N.W.2d 469. Despite our de novo standard of review, we value a trial court's ruling on the matter. *Id.*

¶ 7. The Olsons' argument is premised upon Wisconsin child labor laws, WIS. STAT. § 103.65(1), which states:

> A minor shall not be employed or permitted to work at any employment or in any place of employment dangerous or prejudicial to the life, health, safety, or welfare of the minor or where the employment of the minor may be dangerous or prejudicial to the life, health, safety or welfare of other employees or frequenters.

WISCONSIN ADMIN. CODE § DWD 270.06 complements the statute by setting out a lengthy list of those employments of minors that are absolutely prohibited and those that are permitted subject to stated qualifications or limitations. The introductory paragraph of the rule states:

> The employments and places of employment designated herein shall be deemed to be dangerous or prejudicial to the life, health, safety, and/or welfare of minors under the ages specified, and their employment may be dangerous or prejudicial to the life, health, safety and/or welfare of other employees or frequenters and no employer shall employ or permit such minors to work in such employments.

*Id.*

¶ 8. Racing is not included in the list of prohibited or regulated employment in Wis. Admin. Code § DWD 270.06. Therefore the Olsons rely on the "catchall" provisions of subsec. (33) which prohibits the employment of minors in "[o]ccupations which are found to be hazardous for the employment of minors or detrimental to their health or well-being." § DWD 270.06(33). As we have noted, "[a]n employer who violates the child labor laws is absolutely liable for injuries resulting from the violation." *Beard*, 225 Wis. 2d at 9. Absolute liability is properly imposed if the plaintiff can prove that the employer violated the statute at or about the time of the injury and that the injury occurred. *Id*. Finally, the injured party must be within the protected class of people—the minor, or frequenters or other employees who are endangered by the employment of the minor. *Id*.

¶ 9. We see the statute and administrative rule as clear and unambiguous. They clearly prohibit the employment of a minor, or allowing a minor to work, in an employment setting dangerous or prejudicial to the life, health, safety, or welfare of the minor or other employees or frequenters. The parties appear to agree on this point. But they disagree about the result when the statute and administrative rule are applied to the facts of this case. That exercise presents a question of law that we review de novo. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999).

¶ 10. In applying the statutes and rules to the facts of this case, we bear in mind that "[i]n order for there to be a violation of the child labor laws, there must be an employer/employee relationship." *Beard*,

225 Wis. 2d at 9. The Olsons challenge the circuit court's determination that James was not an Auto Sport "employee" within the meaning of WIS. STAT. § 103.001(5) and that Auto Sport had not permitted him to work contrary to WIS. STAT. § 103.65(1). Auto Sport contends that the summary judgment record presents no indicia that an employer/employee relationship existed between James and Auto Sport or any other entity at the time of the accident.

■

¶ 11. WISCONSIN STAT. § 103.001(5) defines "employee" as "any person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go or work or be at any time in any place of employment." The Olsons argue that James was an employee because he paid an entry fee to Auto Sport, received prize money from Auto Sport when he raced, and was subject to specific rules promulgated by Auto Sport. We do not disagree that James and Auto Sport undoubtedly had a contractual relationship. For instance, if Auto Sport refused to pay prize money to which James was entitled, James certainly could enforce that obligation. Conversely, we do not doubt that if James disobeyed the Auto Sports rules governing a race, Auto Sport could bar James from future participation. But those kinds of mutual obligations did not serve to transform the contract between Auto Sport and James into an employer/employee relationship because they did not entail the kind of authority and control that an employer traditionally exercises over an employee. Section 103.001(5) envisions that the employee be "required or directed by [the] employer . . . to engage in any employment, or to go or work or be at any time in any place of employment." Colloquially stated, the statute envisions

the employer telling the employee to "go here, go there, do this and do that." There is not the slightest hint in the summary judgment record that Auto Sport had that kind of authority or control over James.

¶ 12. Moreover, Auto Sport did not train James to race or provide him with tools or equipment to assist in that endeavor. Finally, Auto Sport made no social security contributions on James' behalf.

¶ 13. We also note that although James was paid prize money for his participation in "feature races," his father testified that this was not James' motivation for racing and that the cost of racing as a hobby exceeded the prize money earned from racing. James' mother similarly testified that James did not race to earn money. While the Olsons contend that Auto Sport exercised control over James by conditioning his opportunity to race on his compliance with track rules, this alone does not amount to an employment relationship. Persons who pay a fee to use or attend a premises are often required to abide by rules promoting safety and efficiency, i.e., stadiums, arenas, amusement parks and zoos. These requirements do not convert the user into an employee of the owner or proprietor of the premises.

¶ 14. In sum, the facts surrounding James' participation indicate, as a matter of law, that he was involved in truck racing for recreational purposes. He paid entry fees for the privilege of participating. Auto Sport could neither require nor direct James to participate in the races it sponsored and promoted. The award of prize money did not represent wages or compensation growing out of an employment relationship. Viewing the summary judgment evidence in a light most favorable to the Olsons, there is no evidence, nor reasonable inference therefrom, supporting the claim that James was the employee of Auto Sport.

¶ 15. The Olsons further claim that even if Auto Sport did not employ James, it permitted James to "work at any employment or in any place of employment dangerous or prejudicial to the life, health, safety, or welfare of the minor." WIS. STAT. § 103.65(1).

¶ 16. The term "work" as employed in WIS. STAT. § 103.65(1) is not defined in WIS. STAT. ch. 103. The parties each cite to definitions of "work" in support of their respective arguments. The Olsons propose a broad definition of work: "[T]o exert oneself physically or mentally especially in sustained effort for a purpose or under compulsion or necessity—contrasted with play." The Olsons contend that James exerted himself mentally in a sustained effort every time he raced. Auto Sport urges a more narrow definition such as that set forth in BLACK'S LAW DICTIONARY 1598 (7th ed. 1999): "Physical and mental exertion to attain an end, esp. as controlled by and for the benefit of an employer; labor." Auto Sport contends that physical or mental exertion to attain the end of recreating or enjoyment is not within the ordinary understanding of the definition of "work."

¶ 17. We agree with Auto Sport that James' racing of trucks did not fall within the ordinarily accepted meaning of "work" and certainly not within the specific meaning of "work" as used in WIS. STAT. § 103.65(1), which is targeted at the improper employment of minors. Undoubtedly James exerted himself mentally and physically during the race as he competed and tried to win the race. But in assessing whether James was at "work," we properly look to the purpose of the effort. The summary judgment record establishes that James' efforts, although indirectly benefiting Auto Sport by attracting spectators, were expended for his own benefit and his own enjoyment. As his father testified, the

prize money was not the motivation for James' racing. In fact, the cost of the racing endeavor exceeded the prize money that James won. If we adopted the Olsons' definition of "work" as taking in all of those physical and mental efforts other than those expended for "play," we would stretch the statutory concept of "work" to unreasonable and potentially absurd limits.

¶ 18. Further, the language of WIS. STAT. § 103.65(1) prohibits a minor from being "permitted to work *at any employment* or in any place of employment dangerous or prejudicial to the life, health, safety, or welfare of the minor." (Emphasis added.) WISCONSIN STAT. § 103.001(7) defines "employment" in relevant part as "any trade, occupation or process of manufacture, or any method of carrying on such trade, occupation or process of manufacture in which any person may be engaged." The summary judgment record is barren of any evidence indicating that truck racing was James' trade or occupation. The record is equally barren of the presence of any employer—whether it be Auto Sport, some other entity, or James himself in a self-employed capacity. While James may have aspired to a professional racing career in the future, the record indicates that at the time of his death, he was a high school student whose only employment had been with a summer road crew the year prior to his death.[2]

¶ 19. Finally, the Olsons cite to WIS. STAT. § 103.67, which sets out minimum ages for certain

---

[2] In response to an interrogatory inquiry as to "all jobs ever held by [James] including name and address of each employer," the Olsons listed only James' 2000 summer employment with the Dorr Township road crew. In addition, James' mother testified that she did not believe James was an employee of the Lake Geneva Raceway.

kinds of permitted work (i.e., fundraising sales, § 103.67(2)(c); sideline officials at high school football games, § 103.67(2)(h); and performances at public exhibitions, § 103.67(2)(b)). The Olsons reason that if such endeavors are considered "work" for purposes of that statute, it follows that James' racing activity should be similarly considered "work" for purposes of WIS. STAT. § 103.65(1). We reject this argument. Section 103.67 addresses minimum age requirements for the employment of minors in certain kinds of employment that are not deemed dangerous. The matter of dangerous employment is left to § 103.65. As we have held, that statute required evidence showing that Auto Sport employed James or otherwise permitted him to work in any employment or place of employment. The Olsons' summary judgment evidence failed to raise any material issue of fact supporting either of these claims.

## CONCLUSION

¶ 20. We conclude that the Olsons failed to raise a genuine issue of material fact supporting their claim that Auto Sport employed James or that it permitted James to work in violation of the child labor laws at the time of the accident resulting in James' death.[3] We therefore uphold the circuit court's grant of summary judgment dismissing the Olsons' complaint.

*By the Court.*—Judgment affirmed.

---

[3] In light of our decision, we need not address the parties' additional arguments that are premised upon a determination that the Olsons had a viable cause of action under the Wisconsin child labor laws. *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (If a decision on one point disposes of an appeal, we will not decide other issues raised.).