COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1863**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV40

IN COURT OF APPEALS
DISTRICT III

CHURCH OF GOD OF CRANDON,

    PLAINTIFF-APPELLANT,

V.

CHURCH OF GOD,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Forest County: WILLIAM F. KUSSEL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Church of God of Crandon ("Crandon Church") sued the Church of God ("COG"), seeking a declaration of interest in

real property and other relief. The Crandon Church appeals from an order of the circuit court, which granted the COG's motions to dismiss the lawsuit for lack of standing and for attorney fees and costs, and which denied the Crandon Church's motions for a preliminary injunction and to vacate the COG's excommunication decision. For the reasons that follow, we affirm.

## BACKGROUND

¶2    The COG is a national religious organization headquartered in Tennessee. At the time of the filing of the present lawsuit, the Crandon Church was organized as local congregation within the COG. In May 2021, the COG informed the Crandon Church that the Crandon Church would merge with a COG-affiliated church in Rhinelander and that the COG planned to sell the Crandon Church real property, which includes the Crandon Church's place of worship ("property").[1]

---

[1] For purposes of this appeal, it is sufficient to note that the property was placed in trust via warranty deed in 1994 for the "exclusive use and benefit of" the COG. The 1994 warranty deed provides:

> If the local congregation … shall at any time cease to function, or exist, or act contrary to the [COG] polity, … then said trustees shall hold title to said real estate including personal property for the [COG] generally in the state where said real estate is located; and said trustees shall convey the said real estate upon demand to the State Board of Trustees of the [COG] in said state ….

We note that the 1994 warranty deed included in the record appears to be a COG template deed and is not signed, dated, or notarized. Because both parties accept the fact that such a deed exists—and neither party challenges the validity of the 1994 warranty deed (with the exception of one Crandon Church argument that we address later, *see infra* ¶31)—we will assume without deciding that the 1994 warranty deed exists and is valid.

¶3      Later that month, the Crandon Church filed the present lawsuit against the COG, seeking declarations of interest in the property and two accounts at CoVantage Credit Union.  The Crandon Church also sought a preliminary injunction "enjoining the [COG] from preventing [the Crandon Church] from continuing to occupy the [property] and that [the Crandon Church] be allowed to use all church property, real and personal, in the same manner as [the Crandon Church] has previously used said property."

¶4      After the present lawsuit was filed, Timothy Cushman, the administrative bishop for the COG's Great Lakes Region, executed a "Declaration as to Excommunication and Disfellowship" (the Declaration), in which he excommunicated certain members of the Crandon Church due to their "unruly and uncooperative actions."[2]  According to the COG, the Declaration was made pursuant to the 2018 "Minutes of the International General Assembly of the [COG]" (2018 Minutes), in which bishops were given the authority to "excommunicate an unruly or uncooperative member without a formal hearing" if it was deemed "in the best interests of the local church."[3]  Pursuant to the COG's appeals process, the Crandon Church challenged the Declaration through the COG's International Executive Committee, which voted unanimously to deny the Crandon Church's appeal on August 19, 2021.

---

[2] According to Cushman, the remaining members not excommunicated were those who "chose to work in harmony" with the decision to merge the churches.

[3] The 2018 Minutes also state that "should any member or members … take action contrary to the polity of the [COG], it is understood that the ownership of all property, both real and personal, remains with the [COG]."

¶5      Subsequently, the COG filed a motion to dismiss the Crandon Church's lawsuit, arguing that the Crandon Church lacked standing after Cushman issued the Declaration. The COG asserted that the Crandon Church could no longer demonstrate any real or immediate injury—and that the Crandon Church was no longer affected by "the issues in controversy"—because "by virtue" of the Declaration, the Crandon Church had "no remaining members" and "effectively ceases to exist." According to the COG, the Crandon Church "has no remaining members of the [COG] … and is therefore no longer entitled to maintain or possess any real property currently held in trust for the general use and benefit of the [COG]."

¶6      In response, the Crandon Church filed in the circuit court a motion to vacate the Declaration, arguing that Cushman lacked the authority to issue the Declaration. The COG then asserted that the "ecclesiastical doctrine" under the First Amendment prohibited the court from resolving any issues raised in the Crandon Church's motion to vacate the Declaration.

¶7      The Crandon Church also challenged the COG's approach—or lack thereof—to winterizing the property and filed with the circuit court an "[a]pplication pursuant to [WIS. STAT. §] 844.01(1) and (2)" (2021-22)[4] and a proposed order. The proposed order, to which the COG objected, required that the COG heat the property at a specific temperature during the winter. Following written submissions from the parties and a motion hearing, the court ordered the COG to drain the property's water pipes, insure the property, and appropriately

_____

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

deal with snow accumulation at the property. The court determined, however, that the COG was not required to heat the property. The court stated that the COG decided that it was not in a "financially []suitable" situation to heat the property and that it would instead rely on insurance in the event something occurred to the property. The court found that the COG had the "ability to make that financial decision."

¶8 Following the circuit court's oral ruling on the winterization issue, the Crandon Church served the COG with a set of interrogatories inquiring about the property's winterization. A letter accompanying the interrogatories stated that the Crandon Church was concerned with items within the property, including "cloth on the pews," and stated that Cushman would be "responsible for any damage" to the items. The letter also requested "to see [Cushman's] cash position vis à vis a heating bill. If he has the money, [the Crandon Church] will ask the [c]ourt to reconsider its ruling." The interrogatories requested Cushman's personal address.

¶9 In turn, the COG filed a motion for a protective order, which the Crandon Church opposed. *See* WIS. STAT. § 804.01(3). The COG argued that the winterization issue was "already litigated," and the circuit court had granted the protective order. The COG filed a subsequent motion for attorney fees and costs for bringing the motion for a protective order. *See* WIS. STAT. § 804.12(1)(c). According to the COG, the Crandon Church's opposition to the protective order was not "substantially justified" because the "sole purpose" for the Crandon Church's interrogatories "was to produce information to relitigate the winterization" issue.

¶10      The circuit court held hearings over two days to address the COG's motions to dismiss and for attorney fees and costs, as well as the Crandon Church's motion for a preliminary injunction. The court heard testimony from several witnesses, including Cushman. Following testimony and written submissions from the parties, the court issued an oral ruling on the Crandon Church's motions for a preliminary injunction and to vacate, as well as the COG's motions to dismiss and for attorney fees and costs.

¶11      The circuit court concluded that it could not review the COG's actions with respect to the Declaration because "to do so would violate the restrictions of the First Amendment." In so ruling, the court noted that Cushman issued the Declaration pursuant to the authority vested in him by the COG—specifically, the 2018 Minutes.

¶12      The circuit court reasoned that the Crandon Church's lawsuit "must now be reviewed in regard[] to [the COG]'s motion to dismiss for standing." According to the court, after the Declaration was issued, the Crandon Church no longer had standing to bring the lawsuit because it "fails to exist" and "can no longer legally possess or maintain the subject property held in trust [for] the use and benefit of the [COG]." The court declined to address the Crandon Church's assertion that the COG attempted to defeat jurisdiction through the Declaration, stating that there was not "sufficient evidence presented as to the alleged motive of" Cushman. Therefore, the court granted the COG's motion to dismiss.

¶13      In addition, the circuit court granted the COG's motion for attorney fees and costs. The court found that the Crandon Church's opposition to the protective order was "not substantially justified" and that the Crandon Church had

failed to provide "any justification for why imposition of [attorney] fees would be unjust." The court awarded the COG $1,725.

¶14 Accordingly, the circuit court denied the Crandon Church's motions for a preliminary injunction and to vacate the Declaration. The court memorialized its oral ruling in a final written decision and order. The Crandon Church now appeals.

## DISCUSSION

### I. First Amendment and standing

¶15 We first note that neither party on appeal addresses the appropriate standard of review under which we should address the Crandon Church's standing. The COG challenged the Crandon Church's standing via a motion to dismiss. "On review of a motion to dismiss for lack of standing, [a] court must 'take all facts alleged by [the petitioner] to be true in determining whether he [or she] has standing to bring his [or her] claim.'" *Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶11, 402 Wis. 2d 587, 977 N.W.2d 342 (second alteration in original; citation omitted). However, "[w]hen, on a motion to dismiss, parties present matters outside the pleadings, the motion should be processed as one for summary judgment." *Converting/Biophile Lab'ys, Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶2, 296 Wis. 2d 273, 722 N.W.2d 633.

¶16 Although the circuit court did not expressly convert the COG's motion to dismiss into one for summary judgment, both the COG and the Crandon Church presented evidence to the court outside the pleadings, including witness testimony. Neither party objected to the other's evidence on the grounds that it was not procedurally permitted or that the court did not properly convert the

motion to dismiss into one for summary judgment. *See* WIS. STAT. § 802.06(2)(b). We therefore interpret the issue of the Crandon Church's standing in the summary judgment context.

¶17 We review an order for summary judgment de novo, using the same methodology as the circuit court. *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Standing also presents a question of law that we review de novo. *MacLeish v. Boardman & Clark LLP*, 2019 WI 31, ¶21, 386 Wis. 2d 50, 924 N.W.2d 799.

¶18 "[S]tanding in Wisconsin is not a matter of jurisdiction, but of sound judicial policy." *Friends of Black River Forest*, 402 Wis. 2d 587, ¶17 (citation omitted). To have standing, a party must show that it "suffered or w[as] threatened with an injury to an interest that is legally protectable." *Krier v. Vilione*, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517. "An organizational plaintiff may have standing to bring suit on either its own behalf ('organizational standing') or on the behalf of one or more of its members ('associational standing')." *Munger v. Seehafer*, 2016 WI App 89, ¶53, 372 Wis. 2d 749, 890 N.W.2d 22 (citation omitted). Organizational standing requires an organizational plaintiff, "like an individual plaintiff, to show 'actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'" *People for the Ethical Treatment of Animals v.*

*United States Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (citation omitted).[5]

¶19     We agree with the COG that if the Declaration is upheld on appeal, the Crandon Church lacks organizational standing to bring the present lawsuit because it will have "no remaining members of the [COG]" and will no longer be "entitled to maintain or possess any" property pursuant to the 1994 warranty deed.[6] In particular, the 1994 warranty deed states that all property—both real and personal—becomes the property of the COG should a "local congregation" "cease to … exist." The Crandon Church cannot file a lawsuit to obtain an interest in property that it does not own. Because we conclude that the First Amendment prohibits our review of the Declaration, the Crandon Church lacks standing to bring the current lawsuit seeking interests in the property and the CoVantage accounts.

¶20     Under the so-called "ecclesiastical abstention doctrine," the Establishment Clause of the First Amendment does not permit civil courts to adjudicate "strictly and purely ecclesiastical" issues within a hierarchical religious organization.[7] *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708-09, 713 (1976); *McRaney v. North Am. Mission Bd. of the S. Baptist*

---

[5] The Crandon Church does not dispute that the standing issue is one of organizational standing.

[6] Of note, the Crandon Church does not contend that the non-excommunicated members of the local congregation remain members of the Crandon Church. Indeed, it appears from the record that those members joined the COG-affiliated church in Rhinelander.

[7] The Establishment Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits states from making any law "respecting [the] establishment of religion." *See* U.S. CONST. amend. I.

*Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020). Such disputes include theological controversies, church discipline, or the conformity of the members of a church to the standard of morals required of them by the church. *Milivojevich*, 426 U.S. at 713-14.

¶21 "Should we be faced with a dispute that hinges on an issue of religious doctrine or polity, we must defer to the resolution of the highest authority of a hierarchical church organization." *Wisconsin Conf. Bd. of Trs. of United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶20, 243 Wis. 2d 394, 627 N.W.2d 469. The ecclesiastical abstention doctrine protects the right of hierarchical religious organizations "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952).

¶22 That said, Wisconsin courts may address "church property disputes under the neutral principles of law approach outlined" by the United States Supreme Court. *Culver*, 243 Wis. 2d 394, ¶21. Under this approach, courts address such issues "upon any number of neutral legal principles, including 'the language of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property.'" *Id.* (quoting *Jones v. Wolf*, 443 U.S. 595, 603 (1979)).

¶23 There is no dispute here that the COG is organized in a hierarchical fashion. Dennis Watkins, the COG's in-house legal counsel in Tennessee,

testified to this fact at the hearings, stating that the COG's hierarchical structure is prescribed in the Book of Church Order.[8] There is similarly no question that the decision to excommunicate certain members of the Crandon Church from the COG was ecclesiastical in nature as it involved disciplining COG members, *see Milivojevich*, 426 U.S. at 717 ("[Q]uestions of church discipline … are at the core of the ecclesiastical concern …."), and—to the extent the neutral principles of law approach permits us to review the COG's procedures and Cushman's authority—the Crandon Church does not argue that Cushman or the International Executive Committee acted outside the authority vested by the 2018 Minutes.

¶24 Accordingly, a civil court cannot, under the First Amendment, review: whether the 2018 Minutes complied with due process or the Bible; what the COG meant by "unruly or uncooperative"; or whether Cushman properly determined that the excommunicated members were "unruly or uncooperative."[9] Similarly, the First Amendment prohibits a civil court from examining the International Executive Committee's review of those issues. To hold otherwise "would undermine the general rule that religious controversies are not the proper subject of civil court inquiry." *See id.* at 713. Under the facts of this case, we must defer to the resolution of any ecclesiastical issues by the International

---

[8] The Crandon Church called former COG Bishop Robert Kimberling to testify at the hearing. Like Watkins, Kimberling stated that the COG "is organized in a hierarchical fashion."

[9] The Crandon Church also argues that even if the Declaration is upheld, the Crandon Church still has standing to claim the CoVantage accounts because its members did not act "contrary to polity." *See supra* note 3. However, like the issues posed with the Declaration, considering whether members acted contrary to polity would violate the First Amendment. In addition, the 1994 warranty deed contradicts the Crandon Church's claim, for the reasons already articulated. *See supra* ¶19.

Executive Committee, which denied the excommunicated members' appeal. *See Culver*, 243 Wis. 2d 394, ¶20.

¶25 The Crandon Church nonetheless asserts that review of the Declaration is permitted in this case "by the fraud or collusion exception to the ecclesiastical abstention doctrine."[10] According to the Crandon Church, "[t]he very fact [that] excommunication was used the very next day to challenge standing raises an inference of fraud."

¶26 To the extent the Establishment Clause permits civil courts to review ecclesiastical issues under the "fraud or collusion" exception to the ecclesiastical abstention doctrine, we conclude the exception does not apply to the facts of this case. *See Jones*, 443 U.S. at 609 n.8; *Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 420 (3d Cir. 2012) ("A doctrinally grounded decision made during litigation to insulate questionable church actions from civil court review may indeed raise an inference of fraud or bad faith.").

¶27 The record does not support the Crandon Church's claim regarding fraud. Rather, the evidence from the motion hearing and the pleadings demonstrates that Cushman issued the Declaration excommunicating the members based upon their actions prior to the Crandon Church's present lawsuit. These actions included: the members' unwillingness to accept the merger; their holding

---

[10] The Crandon Church also contends that review of the Declaration by a civil court is permitted because Cushman "acted under a common law conflict of interest." The Crandon Church supports this argument with citations to a number of cases, none of which demonstrate that a conflict of interest permits this court to review ecclesiastical issues within a hierarchical religious organization.

of an unsanctioned meeting contrary to the 2018 Minutes; and some of the members calling the police on Cushman after he attempted to lock the property's doors. At the motion hearing, Cushman denied knowing that the Declaration would have any impact on the lawsuit.

¶28 As such, the First Amendment prohibits our review of the Declaration. We therefore defer to the International Executive Committee's decision, which denied the excommunicated members' appeal. Accordingly, the excommunicated members are no longer part of the Crandon Church, and, as the COG argued in its motion before the circuit court, the Crandon Church "effectively ceases to exist." The Crandon Church therefore lacks standing to bring this lawsuit.

¶29 The Crandon Church raises several issues regarding the merits of its complaint seeking declarations of interest in the property and the CoVantage accounts. In particular, the Crandon Church argues that the 1948-1994 COG assembly proceedings "constitute the equivalent of legislation prevailing over any conflict"; that Cushman's plan to sell the property "without a substitute in the vicinity violates the terms of" a 1953 deed; and that we must interpret the 1953 deed and determine whether the Declaration violated the deed's terms.

¶30 There is no need for us to address these additional issues raised by the Crandon Church because this court decides cases on the narrowest possible grounds. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707. Simply put, if the Crandon Church ceases to exist, it has no legal right to the property or to the CoVantage accounts pursuant to the 1994 warranty deed.

¶31     The Crandon Church also argues that the 1994 warranty deed failed to comply with the statute of frauds and that "[t]itle to" the CoVantage accounts "has never been transferred to" the COG in violation of WIS. STAT. § 241.25. Although the Crandon Church questioned Watkins on the applicability of the statute of frauds at the hearings, it never argued to the circuit court that the statute of frauds applied to this case. Likewise, the Crandon Church failed to raise an argument in the circuit court with respect to § 241.25. The Crandon Church therefore forfeited these issues, and we will not consider them further.[11] *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177. Similarly, the Crandon Church, for the first time in its reply brief, argues that we should exercise our discretionary reversal authority. We need not, and do not, address this issue because this court does not address issues raised for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

## II. Attorney fees and costs

¶32     The Crandon Church also argues that the circuit court erroneously exercised its discretion by granting the COG's motion for attorney fees and costs. As outlined previously in this opinion, the court granted the COG's motion for a protective order, *see* WIS. STAT. § 804.01(3)(a), as well as the COG's motion for

---

[11] The Crandon Church touches on many other issues in its appellate briefing regarding its standing to bring the present lawsuit. These references are, at times, difficult to decipher, and it is difficult to determine whether the Crandon Church is attempting to raise independent arguments. For example, the Crandon Church contends that the Declaration did not render the church dissolved because "[t]wo or three members can constitute a [c]hurch" under "Matthew 18:20." To the extent we do not address an argument raised by the Crandon Church on appeal, the argument is deemed rejected as undeveloped. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

14

attorney fees and costs, *see* WIS. STAT. §§ 804.12(1)(c)1., 804.01(3)(b). "A [circuit] court has the authority under … § 804.01(3)(a) to issue a protective order for good cause." *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶43, 264 Wis. 2d 318, 667 N.W.2d 14. "Section 804.12(1)(c) applies to the award of expenses incurred in relation to the motion." Sec. 804.01(3)(b); *see Robinson*, 264 Wis. 2d 318, ¶47 & n.21. Under § 804.12(1)(c)1., a court shall require the party "whose conduct necessitated the motion" "to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." *Id.*

¶33     We review a circuit court's decision to award attorney fees and costs under WIS. STAT. § 804.12 for an erroneous exercise of discretion. *See Robinson*, 264 Wis. 2d 318, ¶47. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *260 N. 12th St., LLC v. DOT*, 2011 WI 103, ¶38, 338 Wis. 2d 34, 808 N.W.2d 372.

¶34     In granting the protective order, the circuit court articulated that the information requested by the Crandon Church was related solely to its concern regarding damage to items within the property. The court noted, however, that it had already ruled on the winterization issue and had required the COG to take certain winterization measures at the property. The court questioned whether mold would be an issue in the winter months, but it found that even if there were damage to the inside of the property, the property was insured. The court stated that it did not see the relevance of financial data on the winterization issue given that the issue was already decided. The court also found that the requests for information were "oppressive," "unreasonable," burdensome, and irrelevant.

¶35      Later, in its oral decision on the COG's motion for attorney fees and costs, the circuit court stated that the Crandon Church's opposition to the COG's motion for a protective order was not substantially justified because the information the order sought to protect was irrelevant and pertained only to an issue that was already decided.  The court also found that the Crandon Church failed to provide "any justification for why imposition of attorney[] fees would be unjust."

¶36      According to the Crandon Church, the circuit court erroneously exercised its discretion by granting the motion for attorney fees and costs because it "incompletely analyzed the risk from mold to the cloth on the pews."  Even if the Crandon Church is correct that mold may grow on the pews in the winter, that fact is irrelevant to the issue of whether winterization had already been litigated and decided by the court.  The court previously addressed the winterization issue and ordered the COG to insure the property.  The requested financial information had no relevance to the Crandon Church's claims seeking declarations of interest in the property or the CoVantage accounts.

¶37      The Crandon Church further asserts that the financial information was relevant to whether the COG could afford to heat the building, which would have been the basis for a motion for reconsideration of the circuit court's winterization order.  However, the COG's financial ability to heat the property was not something that the court considered in issuing the winterization order.  Rather, the court found that the COG was the proper party to determine whether it should heat the property.  The court determined that a failure to heat the building was not at issue because the property was insured.

¶38     In short, the circuit court did not erroneously exercise its discretion by ordering the Crandon Church to pay the COG's attorney fees and costs.  The court applied the proper legal standard under WIS. STAT. § 804.12 and reached a decision reasonably supported by the record.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.